IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**FILED IN CLERK'S OFFICE**
**U.S.D.C.**

**JUN 2 ? 2007**

**JAMES N. HATTEN**
By: _____
Deputy Clerk

PACIFIC WESTERN, INC., on
behalf of itself and all others
similarly situated,

    Plaintiffs,

v.

LANDAMERICA CREDIT SERVICES,
INC., f/k/a Info 1 Credit
Reporting, Inc., a Delaware
Corporation,

    Defendant.

CIVIL ACTION NO.

1:05-CV-0895-JEC

## ORDER & OPINION

This case is presently before the Court on defendant's Motion to Dismiss [5].[1] The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss [5] should be **GRANTED in part** and **DENIED in part**.

---

[1] The Court had previously denied this motion without prejudice [16] in order to consider plaintiff's renewed motion to remand [4]. The order indicated that the motion to dismiss would be reactivated if the motion to remand was denied. (*Id.* at 2.) Although the Court issued an order denying the renewed motion to remand, the Clerk did not reactivate the motion to dismiss. The Court understands that the defendant still seeks resolution of that motion.

AO 72A
(Rev.8/82)

**BACKGROUND**

Plaintiff is a mortgage broker, engaged in the business of securing residential mortgage loans for consumers. (Compl. [1] at ¶ 1.)   To obtain credit information about prospective borrowers, plaintiff uses the "desktop underwriter" service made available through the corporation Fannie Mae.  (*Id.* at ¶ 4.)   Defendant, a credit reporting agency, supplies credit histories and related information that can be accessed through the desktop underwriter service.   (*Id.* at ¶¶ 2,7.)   In order to utilize the desktop underwriter service, plaintiff entered into a subscriber agreement with defendant effective January 16, 2003.  (*Id.* at ¶ 5 and Ex. A.)

The desktop underwriter service works as follows.  First, the mortgage broker submits an electronic request for credit information to Fannie Mae.  (*Id.* at ¶ 6.)  Fannie Mae then immediately transmits the request to a service called Informative, which confirms that the entity submitting the request is an authorized user of the service. (Compl. [1] at ¶ 6.)  As soon as the confirmation is complete, Fannie Mae forwards the request to defendant.  (*Id.* at ¶ 7.)   Defendant responds with a credit report, which Informative and Fannie Mae transmit to the mortgage broker.  (*Id.* at ¶ 8.)  Defendant charges a subscriber fee for every initial request for credit information. (*Id.* at ¶ 7.)  If there is a repeat request for information on the

2

same prospective borrower, defendant automatically assesses an additional $3.00 fee. (*Id.* at ¶ 9.)

Apparently, defendant's computer system was not designed to process information fast enough to satisfy Fannie Mae's desktop underwriter service, which requires that a request be completed within twenty seconds. (Compl. [1] at ¶ 11.) As a result, plaintiff and other similarly situated mortgage brokers often received "error messages" when they requested credit information, necessitating several repeat requests to obtain a full credit report on a prospective borrower. (*Id.* at ¶ 12.) Each of these repeat requests resulted in a $3.00 charge. (*Id.*)

Plaintiff advised defendant about the repeat request billing issue in 2004. (*Id.* at ¶ 17.) Defendant acknowledged its error and began crediting plaintiff for the repeat charges in September and October of 2004. (*Id.* at ¶ 17.) According to plaintiff, however, defendant did not refund any of the charges incurred prior to September, 2004. (Compl. [1] at ¶ 16; Pl.'s Resp. to Def.'s Mot. to Dismiss [7] at 5.) In addition, defendant refused to advise other subscribers about the problem. (Compl. [1] at ¶ 17.) Instead, defendant informed plaintiff that it was handling the issue on a "case by case" basis. (*Id.*)

Plaintiff filed this action on behalf of itself and other

3

similarly situated mortgage brokers in March, 2005.   (*Id.* at ¶ 1.)
In its Complaint, plaintiff asserts claims for:   1) breach of
defendant's duty of good faith and fair dealing; 2) money had and
received and unjust enrichment; 3) deceptive trade practices; and 4)
fraud.   (*Id.* at ¶¶ 29-44.)   Defendant has filed a motion to dismiss
all of plaintiff's claims under Rule 12(b)(6), which is presently
before the Court.   (Def.'s Mot. to Dismiss [5].)

## DISCUSSION

### I.    Standard

In ruling on defendant's motion, the Court must assume
plaintiff's allegations are true, and construe all facts and
inferences in the manner most favorable to plaintiff.   *Scott v.
Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005).   Judgment on the
pleadings is only appropriate if plaintiff "can prove no set of facts
in support of [its] claim which would entitle [it] to relief."
*Horsley v. Feldt,* 304 F.3d 1125, 1131 (11th Cir. 2002).

### II.   Breach of Implied Duty of Good Faith and Fair Dealing

In Count I of the Complaint, plaintiff asserts a claim for
defendant's alleged breach of "the duty of good faith and fair
dealing [that is] applicable to all contracts."   (Compl. [1] at ¶
30.)   Specifically, plaintiff alleges that defendant breached an
implicit contractual duty to design its computer system to comply

4

with the requirements of Fannie Mae's desktop underwriting service, so that subscribers were not forced to submit repeat requests for information and thereby incur additional charges. (*Id.* at ¶ 33.) Plaintiff further claims that defendant breached its duty to use good faith in determining the "standard rates" for its services, which should not have included additional charges necessitated by defendant's faulty computer system.[2] (Pl.'s Resp. to Def.'s Mot. to Dismiss [7] at 8.)

Defendant argues that Count I should be dismissed because plaintiff "does not claim that [defendant] breached any portion of the subscriber agreement." (Def.'s Mot. to Dismiss [5] at 4.) This argument misconstrues the nature of the duty of good faith and fair dealing, which is *implied* in every contract. *See Constr. Lender, Inc. v. Sutter,* 228 Ga. App. 405, 409, 491 S.E. 2d 853, 858 (1997) (discussing the implicit duty of good faith and fair dealing).[3] This duty, which modifies the meaning of all explicit terms in a contract, "'requires both parties . . . to perform their promises and provide such cooperation as is required for the other party's performance.'"

---

[2] The agreement provides for payment at the "standard rates" in effect at the time defendant provides the service. (Compl. [1] at Ex. A.)

[3] Georgia law applies to this case pursuant to a choice of law provision in the subscriber agreement, which provides that the agreement: "shall be governed in accordance with the laws of the State of Georgia." (Compl. [1] at Ex. A.)

*Physician Specialists in Anesthesia, P.C. v. MacNeill,* 246 Ga. App.
398, 407, 539 S.E. 2d 216, 224 (2000) (quoting *Ihesiaba v. Pelletier,*
214 Ga. App. 721, 724(2), 448 S.E. 2d 920 (1994)). *See also, Stuart
Enter. Int'l, Inc. v. Peykan, Inc.,* 252 Ga. App. 231, 234, 555 S.E.
2d 881, 884 (2001)("The implied covenant of good faith modifies, and
becomes part of, the provisions of the contract itself."). For
example, when a contract for the sale of real estate includes a
financing condition, the purchaser has an implied duty to diligently
seek financing, and the seller has an implied duty to allow the
purchaser a reasonable time within which to obtain financing. *See
Brack v. Brownlee,* 246 Ga. 818, 819, 273 S.E. 2d 390, 391 (1980).

The subscriber agreement does not expressly obligate defendant
to design a computer system that complies with Fannie Mae's
requirements for operating the desktop underwriting service. (Compl.
[1] at Ex. A.) However, given that the entire purpose of the
subscriber agreement is to enable plaintiff and similarly situated
mortgage brokers to utilize Fannie Mae's desktop underwriting
service, that obligation may fairly be implied. Moreover, although
the agreement does not set a specific rate for defendant's services,
defendant was obligated to use good faith in determining its
"standard rate." Assuming plaintiff's allegations are true,
defendant breached this duty by imposing additional charges for
repeat requests necessitated by defendant's own poorly designed

6

computer system.

Defendant also suggests that Count I should be dismissed because plaintiff admits that it received a complete refund of all improper charges. (Def.'s Mot. to Dismiss [5] at 4.)   Plaintiff does admit, and indeed alleges, that defendant began issuing refunds for improper charges in September of 2004.   (Compl. [1] at ¶ 17.)   However, plaintiff claims that defendant did not refund any charges incurred prior to September, 2004. (Pl.'s Resp. to Def.'s Mot. to Dismiss [7] at 5.)   Moreover, plaintiff has filed this suit as a class action on behalf of itself and other similarly situated mortgage brokers. (Compl. [1] at ¶¶ 21-28.)   It is unclear whether any other putative class members received refunds for improper charges incurred as a result of defendant's faulty computer system.   (*Id.*)

In short, the allegations in plaintiff's complaint state a claim for breach of defendant's implied contractual obligations. Accordingly, plaintiff's motion to dismiss Count I of plaintiff's Complaint is **DENIED**.[4]

---

[4]   Defendant also argues that plaintiff's requested damages are barred by the subscriber agreement, which purports to limit either party's liability for "incidental, consequential, indirect, or special damages." (Compl. [1] at Ex. A.)   Such clauses are generally valid under Georgia law as long as they are "explicit, prominent, clear and unambiguous."   *Parkside Center, Ltd. v. Chicagoland Vending, Inc.*, 250 Ga. App. 607, 611, 552 S.E. 2d 557, 562 (2001). The liability limitation clause in this case appears to meet these conditions, and will likely be upheld to limit plaintiff's recovery to actual damages.   *Id.   See also Am. Car Rentals, Inc. v. Walden*

### III. Money Had and Received and Unjust Enrichment

In Count II of the Complaint, plaintiff asserts a claim for unjust enrichment and money had and received. (Compl. [1] at ¶¶ 35-37.) The facts underlying plaintiff's unjust enrichment and money had and received claim are the same: plaintiff contends that it was improperly billed for repeat requests necessitated by defendant's faulty computer system, and that, under the circumstances, it would be inequitable to permit defendant to keep the improper payments. (*Id.*)

The theory of unjust enrichment only applies "'when there is *no* legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated.'" *Tidikis v. Network for Med. Commc'ns & Research, LLC,* 274 Ga. App. 807, 811, 619 S.E. 2d 481, 485 (2005)(quoting *Smith Serv. Oil Co. v. Parker,* 250 Ga. App. 270, 272, 549 S.E. 2d 485 (2001)). *See also, Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC,* 426 F.Supp. 2d 1356, 1372 (N.D. Ga. 2006)(Thrash, J.)(recognizing that, under Georgia law, "unjust enrichment is available only when there is no legal contract"). In this case, the parties agree that their relationship is governed by

---

*Leasing, Inc.,* 220 Ga. App. 314, 317, 469 S.E. 2d 431, 433 (1996)(explaining that plaintiff "cannot recover what is expressly disallowed by the contractual language of the Agreement it signed"). However, the clause does not require dismissal of Count I of the Complaint, as plaintiff has alleged actual damages.

AO 72A
(Rev.8/82)

a valid and binding contract.   (Compl. [1] at ¶¶ 5, 30-33 and Ex. A;
Def.'s Mot. to Dismiss [5] at 6.)   Consequently, any benefit
conferred upon defendant arose from plaintiff's obligations under the
contract.   *Tidikis,* 274 Ga. App. at 811, 619 S.E. 2d at 485.
Defendant's motion to dismiss plaintiff's unjust enrichment claim is
therefore **GRANTED**.

Plaintiff's claim for money had and received is also precluded
by the parties' admittedly valid contract.   *See Baghdady v. Cent.
Life Ins. Co.,* 224 Ga. App. 170, 171, 480 S.E. 2d 221, 224 (1996).
Moreover, to prevail on this claim, plaintiff must demonstrate that:
"[defendant] has received money [from plaintiff] that in equity and
good consc[ience] [it] should not be permitted to keep; demand for
repayment has been made; and the demand was refused."   *Taylor v.
Powertel, Inc.,* 250 Ga. App. 356, 359, 551 S.E. 2d 765, 770 (2001).
Plaintiff acknowledges that defendant satisfied its demand for a
refund of improper charges in September and October of 2004. (Compl.
[1] at ¶ 17.)   Plaintiff does not allege that it made any other
demands for a refund, and fails to respond to defendant's arguments
on this issue. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss [7] at 10-
11.)   Accordingly, defendant's motion to dismiss plaintiff's claim
for money had and received is **GRANTED**.

9

## IV.  Deceptive Trade Practices

In Count Three of the Complaint, plaintiff asserts a claim under Georgia's deceptive trade practices act, O.C.G.A. § 10-1-372. (Compl. [1] at ¶¶ 38-41.)  Section 10-1-372 is the state analogue to the federal Lanham Act. *See Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1203 (11th Cir. 1997)("It should be apparent that § 43(a) of the Lanham Act and § 10-1-372(a)(2) of the UDTPA provide analogous causes of action governed by the same standard.").  Like the Lanham Act, § 10-1-372 primarily deals with trade practices that are likely to cause confusion in the marketplace, such as passing off goods or creating a false impression as to the source, sponsorship or approval of goods. *See* O.C.G.A. § 10-1-372(a)(1)-(12).

Defendant's alleged actions in this case are not among the specifically enumerated practices that § 10-1-372 defines as "deceptive." *Id. See also Eckles v. Atlanta Tech. Group, Inc.*, 267 Ga. 801, 485 S.E. 2d 22, (1997)(explaining that § 10-1-372 prohibits practices that cause a likelihood of confusion in the marketplace). Consequently, defendant's conduct is not actionable under Georgia's deceptive trade practices act.  Plaintiff has not pointed to any other legal basis for its "deceptive trade practices" claim.  (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss [7] at 11-13.)  Accordingly,

10

defendant's motion to dismiss Count Three of plaintiff's Complaint is **GRANTED**.

## V.   Fraud

Finally, in Count Four of the Complaint, plaintiff asserts a claim for fraud. (Compl. [1] at ¶¶ 42-44.) To prevail on its fraud claim, plaintiff must prove: "1) a false representation or omission of material fact; 2) scienter; 3) an intent to induce the party alleging fraud to act or refrain from acting; 4) justifiable reliance; and 5) damages." *Looney v. M-Squared, Inc.,* 262 Ga. App. 499, 504, 586 S.E. 2d 44, 49 (2003). Plaintiff also must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "the circumstances constituting fraud . . . shall be stated with particularity." FED. R. CIV. P. 9(b). *See Cooper v. Blue Cross & Blue Shield,* 19 F.3d 562, 568 (11th Cir. 1994)("The . . . complaint must allege the details of the . . . allegedly fraudulent acts, when they occurred, and who engaged in them.")

In support of its fraud claim, plaintiff alleges that defendant was aware of the overcharges caused by its computer system in September of 2004, but intentionally refused to advise its subscribers of the problem at that time. (Compl. [1] at ¶¶ 17, 43.) Plaintiff further alleges that the subscribers justifiably relied on defendant's misleading omission, allowing defendant to continue to

11

collect improper fees on repeat requests necessitated by defendant's faulty system. (*Id.* at ¶¶ 43-44.) These allegations encompass all of the essential elements of fraud, and sufficiently describe the surrounding circumstances to comply with Rule 9(b).

The Court agrees with defendant that it is unlikely that plaintiff will ultimately be able to demonstrate justifiable reliance in this case. As to this element, there must be proof that plaintiff and other subscribers exercised due care to discover the alleged fraud. *Todd v. Martinez Paint & Body, Inc.,* 238 Ga. App. 128, 129, 517 S.E. 2d 844, 846 (1999). Misrepresentations, and particularly misleading omissions, "are not actionable unless the complaining party was justified in relying [on them] in the exercise of common prudence and diligence." *Id.* Plaintiff and other subscribers must have been on notice of a potential problem: they received error messages, which necessitated repeat requests, and they were billed for the associated charges. Their failure to investigate the problem suggests that they did not exercise "common prudence" or due diligence. *Id.*

Whether the facts are sufficient to demonstrate justifiable reliance, however, is a question that is more appropriately resolved on summary judgment than on a motion to dismiss for failure to state a claim. Plaintiff has alleged facts, including justifiable and detrimental reliance, sufficient to state a claim for fraud.

12

Accordingly, defendant's motion to dismiss Count Four of the Complaint is **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court finds that defendant's Motion to Dismiss [5] should be **GRANTED in part** and **DENIED in part**.

SO ORDERED, this _29_ day of June, 2007.

JULIE E. CANES
UNITED STATES DISTRICT JUDGE

13